UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WHISTLEBLOWER 1, and WHISTLEBLOWER 2 (said name being fictitious in the interest of protecting the identities of)<br><br>Plaintiffs,<br><br>v.<br><br>BOARD OF EDUCATION OF THE CITY OF ELIZABETH, NEW JERSEY, RENAISSANCE ASSOCIATES, LTD, HAROLD KENNEDY, DONALD GONCALVES, KAREN MURRAY, JOHN LA PERLA, KEVIN BARROWS,<br><br>Defendants. | Civil Action No. 11-6480 (SDW)(MCA)<br><br>**OPINION**<br><br>November 22, 2011 |

**WIGENTON**, District Judge.

Before the Court is Plaintiffs Whistleblower 1 and Whistleblower 2's ("Plaintiffs") application for a Preliminary Injunction and an Order to Show Cause pursuant to Fed. R. Civ. P. 65 to enjoin Defendants, temporarily and permanently, from conducting an investigation to ascertain Plaintiffs' identities.  Defendants filed a brief in opposition.  Oral argument was held before this Court on November 16, 2011.  The Court has reviewed the submissions of the parties, and for the reasons set forth below, Plaintiffs' request for relief is DENIED.

**FACTUAL BACKROUND**

Plaintiffs are employees of the Board of Education of the City of Elizabeth, New Jersey ("the Board").  (Compl. ¶ 1.)  Defendants are the Board; Renaissance Associates, Ltd ("Renaissance"), a "Digital Forensics Investigations consulting group"; Harold E. Kennedy,

1

Elizabeth Public Schools' Business Administrator and Board Secretary; Donald Graves, the Board's Secretary; Karen Murray, the Board's Director of Human Resources and in house counsel; John La Perla and Kevin Barrows, who are both principal members of Renaissance[1] (collectively "Defendants"). (Id. ¶¶ 2-8.)

Plaintiffs allege that they "became aware that children of at least one Board member and two Board employees were receiving free lunch . . . in violation of government regulations." (Id. ¶ 9.)  Subsequently, Plaintiffs allegedly disclosed this information to the Union County Prosecutor's office. (Id.)  Thereafter, on August 21, 2011, the Newark Star Ledger reported that three of the Board's employees had applied for and received the benefit of the free lunch program even though their incomes exceeded the program's limit. (Id. at ¶ 10.)  Consequently, the Board sought to conduct an internal forensic investigation to identify the individuals responsible for the information breach. (See id. ¶ 12.)  As a result, in September 2011, the Board issued a Request for Proposal seeking bid proposals from companies eligible to conduct forensic investigations. (Nelson Decl. Ex. A.)  On September 19, 2011, the Board awarded the bid to Renaissance. (Id. at Ex. B.)  Plaintiffs seek to enjoin Defendants from conducting the forensic investigation. Plaintiffs allege that the Board's contract with Renaissance is illegal because it is in violation of N.J. Stat. Ann. §18A:18A-1 et seq. (West 2011) (Count One), Defendants' conduct constitutes a violation of the New Jersey Conscientious Employee Protection Act, N.J. Stat. Ann. § 34:19-3 et seq. (West 2011) ("CEPA") (Count Two), and Defendants' actions are retaliatory and in violation of 42 U.S.C. § 1983, the First Amendment and the Whistleblower Protection Act of 1989, 5 U.S.C. § 2302 ("WPA") (Count Three).

---

[1] The claims against Defendants John La Perla and Kevin Barrows were dismissed on the record during the November 16, 2011 oral argument because the Complaint does not allege any wrongdoing on their part. Similarly, this Court finds that the claims against Renaissance are dismissed because Plaintiffs acknowledged during oral argument that they have not alleged any wrongdoing against Renaissance.

**LEGAL STANDARD**

"[A]n injunction is 'an extraordinary remedy, which should be granted only in limited circumstances.'" Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co., 290 F.3d 578, 586 (3d Cir. 2002) (quoting Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1989)).  "The decision whether to enter a preliminary injunction is committed to the sound discretion of the trial court."  Duraco Prods., Inc. v. Joy Plastic Enters., 40 F.3d 1431, 1438 (3d Cir. 1994).  In considering whether to grant a preliminary injunction, a court must review the following factors: "(1) the likelihood that the moving party will succeed on the merits; (2) the extent to which the moving party will suffer irreparable harm without injunctive relief; (3) the extent to which the nonmoving party will suffer irreparable harm if the injunction is issued; and (4) the public interest."  Shire U.S., Inc. v. Barr Labs., Inc., 329 F.3d 348, 352 (3d Cir. 2003).

**DISCUSSION**

**I.   Likelihood of Success on the Merits**

1. Contract Claim

Plaintiffs seek this Court to enjoin the Board's contract with Renaissance because it is illegal and in violation of N.J. Stat. Ann. § 18A:18A-1 et seq. (Compl. ¶¶ 32, 41.)  However, this Court has no jurisdiction to examine the Board's contract with Renaissance.  N.J.A.C. § 6A:23A-1.1 places oversight of New Jersey boards of educations' spending with the New Jersey Commissioner of Education (the "Commissioner") and N.J.A.C. § 6A:23A-5.1 details the appropriate procedure to address concerns about a New Jersey school district's inefficient and ineffective spending.  N.J.A.C. § 6A:23A-5.1(a) provides:

> If the Department of Education identifies ineffective or inefficient expenditure(s) by a school district or county vocational school district, including, but not limited to, the practices prohibited in N.J.A.C. [§] 6A:23A-5.2 through 5.9, the **Commissioner shall**, except as otherwise provided in (h) below, provide the school district or county vocational school district the opportunity to be heard as to why the amount of the ineffective or inefficient expenditure(s) shall not be withheld from State aid or refunded to the Department.

(emphasis added).

Plaintiffs' argument that the Board's contract with Renaissance is in violation of N.J. Stat. Ann. § 18A:18A-1 et seq. also suffers from the same flaw because N.J.A.C. § 6A:23A-5.4 places review of an alleged violation of public school contracts law with the Commissioner. Consequently, this Court does not have jurisdiction to determine the legality of the Board's contract with Renaissance and that claim is dismissed.

2. CEPA Claim

To sustain a CEPA claim, a plaintiff must demonstrate that:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3c; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003).

"Under CEPA, '[r]etaliatory action means the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment.'" Revell v. City of Jersey City, 394 F. App'x 903, 907 (3d Cir. 2010) (quoting N.J. Stat. Ann. § 34:19-2(e)). According to the Third Circuit, "New Jersey courts have interpreted N.J.S.A. 34:19-2(e) 'as requiring an employer's action to have either impacted on the

4

employee's compensation or rank or be virtually equivalent to discharge in order to give rise to the level of a retaliatory action required for a CEPA claim.'" Caver v. City of Trenton, 420 F.3d 243, 255 (3d Cir.2005) (internal quotation marks omitted) (quoting Klein v. Univ. of Med. & Dentistry of New Jersey, 377 N.J. Super. 28, 46 (App. Div. 2005)).  Additionally, "[t]he definition of retaliatory action speaks in terms of completed action." Keelan v. Bell Commc'ns Research, 289 N.J. Super. 531, 539 (App. Div. 1996).  Plaintiffs do not allege that they have been discharged, suspended or demoted. In fact, Plaintiffs are still employed by the Board.

Nonetheless, Plaintiffs, relying on Kadetsky v. Egg Harbor Twp. Bd of Educ., 82 F. Supp. 2d 327 (D.N.J. 2000), assert that the Board's investigation is a "pattern of harassment" which affects Plaintiffs' condition of employment and constitutes and adverse employment action. (Pl.'s Br. 10-11.)  Like Plaintiffs, the plaintiff in Kadetsky sought for the "[c]ourt to recognize that harassment, instead of a 'completed action' like discharge, suspension or demotion, is an 'adverse employment action' for purposes of a CEPA violation." Id. at 340. However, the court specifically noted that it "need[ed] not reach the question of what level of conduct less than 'discharge, suspension or demotion' constitute[ed] an 'adverse employment action'" because the plaintiff did not allege that he suffered any "lasting prejudice." Id. Similarly, Plaintiffs here have failed to allege that they have suffered a lasting prejudice. Plaintiffs merely assert that Defendants' conduct "has the potential to inflict lasting prejudice" on them. (Pls.' Br. 10.)  Plaintiffs' speculative allegations are insufficient for purposes of CEPA.

3. First Amendment Claim and WPA

Plaintiffs allege that Defendants' actions violate 42 U.S.C. § 1983 and the First Amendment because they were retaliatory.  To establish a First Amendment retaliation claim, a plaintiff must allege "(1) that his speech was protected, (2) that he suffered an adverse

5

employment action, and (3) that his protected speech was a substantial or motivating factor for the adverse employment action." Mosca v. Cole, 217 F. App'x 158, 164 (3d Cir. 2007) (citing Swineford v. Synder Cnty., 15 F.3d 1258, 1270 (3d Cir. 1994)).

Plaintiffs maintain that the Board's investigation is retaliatory. This argument lacks merit. "A public employer 'adversely affects an employee's First Amendment rights when . . . it makes decisions, which relate to promotion, transfer, recall and hiring, based on the exercise of an employee's First Amendment rights.'" Brenan v. Norton, 350 F.3d 399, 419 (3d Cir. 2003) (quoting Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 686 (4th Cir. 2000)). As stated earlier, Plaintiffs have not been discharged, demoted or suspended as a result of their disclosure. Therefore, Plaintiffs allegations are purely speculative at this juncture.

Nonetheless, Plaintiffs argue that Defendants' actions are harassing and "would create an actual or potential chilling effect" on the exercise of free speech. (Compl. ¶ 56.) "When determining whether a retaliatory campaign of harassment is actionable, the question is whether the alleged retaliatory conduct would 'deter a person of ordinary firmness from exercising his First Amendment rights.'" Sheshee v. City of Wilmington, 67 F. App'x 692, 694 (3d Cir. 2003) (quoting Suppan v. Dadonna, 203 F.3d 228, 233 (3d Cir. 2000)). Although generally, the question of whether a defendant's campaign of harassment is actionable under § 1983 is a question of fact, Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006), this Court concludes that Plaintiffs have not sufficiently alleged a First Amendment retaliation claim. Defendants have not specifically targeted their investigation at Plaintiffs because all of the Board's employees are being investigated and Plaintiffs identities are unknown to Defendants. Other than the Board's investigation, Plaintiffs have not alleged that the Board has taken any

other retaliatory actions against them.  Overall, Plaintiffs have not pled an actionable First Amendment retaliation claim under these facts.[2]

Plaintiffs also appear to allege that Defendants' conduct violates the WPA.  However, the WPA is inapplicable here because it only applies to federal employees and Plaintiffs are not federal employees.  See Fleeger v. Principi, 221 F. App'x 111, 115 (3d Cir. 2007) (citing § 2302(b)(8)).

## CONCLUSION

For the reasons stated above, Plaintiffs' application for a Preliminary Injunction and an Order to Show Cause is DENIED.  This case is CLOSED.

s/ Susan D. Wigenton  
**Susan D. Wigenton, U.S.D.J.**

---

[2] Plaintiffs have no basis for a § 1983 claim because they do not have a viable First Amendment retaliation or WPA claim.  This is because § 1983 does not "[b]y itself . . . create any rights, but provides a remedy for violations of those rights created by the Constitution or federal law."  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906-07 (3d Cir. 1997) (citing Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).